WILLIAM F. WEBER, PROSECUTOR, v. CITY OF ATLANTIC CITY, RESPONDENT.

Argued May 5, 1925—Decided October 26, 1925.

The submission by a board of commissioners of an ordinance to the voters of a city, under the provisions of chapter 179 of the laws of 1913, is permissive and not compulsory, and where an ordinance providing for the purchase of lands for a site for the erection of a convention hall, pursuant to statutory authority, and for the preparation of plans and specifications, advertising for bids, &c., was submitted to and approved by the voters, the commission may, either by a new ordinance or by an amendment to the original ordinances, provide for payment of architects and engineers in the preparation of the building plans, and payment for such architects and engineers, without again submitting the matter to the voters for approval.

On application for writ of *certiorari.*

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the prosecutor, *Bourgeois & Coulomb.*

For the respondent, *W. Frank Sooy.*

The opinion of the court was delivered by

LLOYD, J. The city commissioners of Atlantic City having under consideration the erection of a convention hall

building in that city, on the 18th of October, 1923, passed an ordinance entitled "An ordinance providing for the purchase of land and premises within the limits of the city of Atlantic City to.be used as and for a site for the erection of a convention hall, building or buildings, and providing for the preparation of plans and specifications and advertisement for bids for the erection and construction of the convention hall, building or buildings, and providing the necessary cost thereof, and for the submission of the entire question and of this ordinance to a referendum." The ordinance was passed in virtue of the authority of a supplement to the Home Rule act of 1912, chapter 171, approved March 17th, 1916. The supplement in question authorizes the commissioners to "by ordinance acquire the necessary land, and authorize and provide for the construction thereon of a building or buildings suitable for conventions, temporary or permanent exhibitions * * * and may, by ordinance, provide from time to time for the issue of bonds in such amounts as may be necessary for such purposes, provided that the bonds issued for the above purpose shall not be included in the debt limit of said city to the extent that the income from such enterprise shall carry the interest falling due upon the bonds and the sinking fund provided for their payment."

The ordinance provided for its submission to the people in accordance with the provisions of chapter 179, laws 1913, which enacts that "any ordinance or measure that the board of commissioners or the qualified electors of the city shall have authority to enact, the board of commissioners may, of its own motion, submit to the electors for adoption or rejection at a general or special municipal election, in the same manner and with the same force and effect as is provided in this act for ordinances or measures submitted on petition."

It was accordingly submitted under several different heads: (1) Should the provisions of the ordinance be adopted? (2) Should the city acquire the lands by condemnation? The remaining questions were ancillary, and do not materially affect the question hereafter to be decided. The city thereupon became the owner through condemnation pro-

ceedings at a cost of $1,764,105.86 of a tract of land upon which to construct the convention hall. Following this action interchange of views took place between the commissioners and various civic organizations, clubs and associations in the city respecting the desirableness of buildings indicated in certain plans and drawings, as a result of which these were withdrawn and other plans and specifications including a model, were obtained and exhibited to the public. These having met with general approval, and detailed drawing and plans being essential in order that the same might be submitted to contractors for the purpose of estimating the cost thereof, an ordinance known as No. 20 was adopted April 23d, 1925, entitled "A supplement to an ordinance entitled 'An ordinance providing for the purchase of lands and premises within the limits of the city of Atlantic City, to be used as and for a site for the erection of a convention hall, building or buildings, and providing for the preparation of plans and specifications and advertisement for bids for the erection and construction of the convention hall, building or buildings, and providing the necessary cost thereof, and for the submission of the entire question and of this ordinance to a referendum,' approved October 18th, 1923."

This last-named ordinance is under attack by the prosecutor in an application now presented to the court for a writ of *certiorari to* review the same. The grounds upon which the writ is sought and argued in the prosecutor's brief are— (1) that the ordinance of 1923, to which the present ordinance was a supplement, was adopted by referendum to the people, and, therefore, no supplement or amendment to that ordinance can be made without a referendum; (2) that the ordinance under attack provides "that the costs and expenses of the services of architects and engineers as aforesaid, for the purposes aforesaid, shall be paid out of the proceeds of bonds to be issued for that purpose. Said bonds to be issued under and subject to the provisions of chapter 171 of the laws of the State of New Jersey of the session of 1916."

Neither of these grounds are, in our judgment, sufficient to justify the issuance of the writ. Under the statute of

1916 it was competent for the commissioners, within the limitations of that act, to provide for the purchase of lands and the construction of a convention hall. Under the act of 1913, *supra,* they were permitted, but not required, to submit the question to a vote of the people for approval. Having done so, and having secured public approval, the necessary lands were secured for the purpose. This terminated the relation of the voters directly to the proposed enterprise. The lands in the possession of the city would constitute but a futile step in the direction of a .convention hall unless plans and specifications of a practical sort preliminary and essential to any work in the way of construction were provided for. This being true, the commissioners took the next logical step, namely, the adoption of an ordinance providing for the procurement of such plans and specifications and providing, also, for raising moneys necessary to pay for the same. This might, of course, have been done by an ordinance wholly independent of the original ordinance of 1923. The commissioners, however, chose to provide therefor through an amendment to the earlier ordinance. This amendment did not provide for its submission to the voters for their approval, nor did the law require that this should be done. We can think of no reason suggesting such a course to be necessary. The act of 1913 was, obviously, intended to give to the governing body of our municipality an opportunity to consult their constituents on matters of moment, but even this it did not compel. Having approved the scheme of the commissioners in the fundamental proposition of providing a convention hall for the city, the whole object of the act and of the submission was attained. The commissioners by their adoption of the ordinance and the voters by their approval had signified a purpose to provide the city with the convention hall. Having done this much, it would be unreasonable to suppose that the commissioners were expected to stop there and not take .the essential steps to a utilization of the property which they had been authorized to procure. The fact that, in taking the subsequent step, they did so in the form of an ordinance amending the earlier ordinance,

imposed no obligation on the commissioners to submit the amendatory ordinance.

It is suggested for the writ that inasmuch as the original ordinance authorizes an expenditure of but $1,500,000 by purchase, therefore the lands already having cost upon condemnation a larger sum, nothing further could be expended by the city. We can see nothing of force in this. Certainly, it did not preclude the city from making further appropriation to advance the project in which it was already so deeply involved.

It is next contended that the ordinance of 1923 did not authorize the construction of the convention hall itself, and that, therefore, the ordinance to obtain plans and specifications and providing for the expense thereof was illegal. While it is true the commissioners had on their hands a tract of land on which it was intended to construct a convention hall, this, of itself, did not oblige them to pursue the enterprise if the subsequent cost should be prohibitive. It is the wise man who counts the cost before he embarks, and it was obviously with this thought in mind that the commissioners determined to obtain the plans and specifications necessary for their guidance in this respect. To require that the commissioners should commit themselves irrevocably to the construction of a building which might be inadvisable in advance of knowledge of the probable cost it seems to us is required neither by the law nor by good business judgment. It would serve no useful purpose that the commissioners either by ordinance or resolution, should authorize the construction of a building without definite statement of the character of such building, and this, obviously, could not be obtained without the plans therefor being first procured. The proposal to construct a convention hall in Atlantic City has met, first, the approval of the commissioners, and this approval has been ratified by vote of the people. Such action should not be lightly interfered with, or its progress arrested. We think the commissioners were well within the requirements of the law in the adoption of the ordinance in question.

The writ of *certiorari* will be denied.